## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| JAMES RUTHERFORD; BECKY RUTHERFORD; and MICHAEL HARRIS, on behalf of themselves and all others similarly situated | ) ) ) | Case Number |
| Plaintiffs, | ) | Honorable: |
| v. | ) ) | |
| CITY OF HOWELL and the HOWELL DOWNTOWN DEVELOPMENT AUTHORITY, | ) ) ) | **CLASS ACTION COMPLAINT** |
| Defendant. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1. Recently, the United States celebrated the twenty-sixth anniversary of the Americans with Disabilities Act (ADA). According to Congress, fully accessible sidewalks and pedestrian crossings are the ADA's corner-stone:

> The employment, transportation, and public accommodation sections of this [Americans with Disabilities] Act would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets.

H.R. Rep. No. 101-485, pt. 2, at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367.

2. In Howell, people with mobility impairments, who use wheelchairs or other adaptive aids, find that Howell's streets, walks and municipal parking are not readily accessible to and usable by them. And while Howell is in some ways becoming more accessible, in other, critical ways, Howell is regressing in accessibility, by creating new dangerous curb ramps and

sidewalks with inaccessible slopes and unprotected edges that are tipping hazards, and creating new municipal parking that is inaccessible and by removing long existing curb ramps and replacing them with grass and new, solid curbs, among other practices, detailed below.

3. This lawsuit concerns only services, programs, activities and facilities located within the borders of the City of Howell. Plaintiffs bring this lawsuit to make defendants' facilities, services, programs and activities accessible according to law.

4. More than a decade ago, when interpreting the ADA, the federal Sixth Circuit Court of Appeals found:

> "[F]ailing to provide curb cuts and other accommodations in the course of altering city streets and sidewalks in violation of [28 C.F.R. ] § 35.151] denies the disabled meaningful access to public services by perpetuating architectural barriers that impede such access…".

*Ability Center of Greater Toledo v City of Sandusky, Ohio*, 385 F.3d 901, 913-914 (6th Cir. 2004). This was most recently confirmed in a lawsuit very similar to our case, *Mote v. City of Chelsea*, No. 16-11546, 2017 WL 2215039, (E.D. Mich. May 19, 2017).[1] However, thirteen years later, the majority of intersections in Howell lack one or more required ADA-compliant curb cuts.

---

[1] The Honorable David M. Lawson notified counsel that the *Mote* decision has been submitted for publication.

5. Plaintiffs James and Becky Rutherford live in Howell, and plaintiff Michael Harris travels to Howell to conduct business for the Michigan Paralyzed Veterans of America. Plaintiffs bring this lawsuit to make Howell accessible according to law.

6. The defendants are the City of Howell, and the Howell Downtown Development Authority, ("DDA").

7. Defendants—through defective provision, construction and alterations, combined with insufficient provision of, maintenance of and enforcement of—have continuously failed to ensure that their sidewalks, street crossings, municipal parking and certain other facilities, services, programs and activities are readily usable by and accessible to plaintiffs and others.

## II.   JURISDICTION AND VENUE

8. This is an action for declaratory and final injunctive relief, brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 to 12213, specifically Title II of the ADA, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., and Michigan's Persons with Disabilities Civil Rights Act.

8.A. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504 of the Rehabilitation Act.

8.B. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8.C. Venue is proper under 28 U.S.C. § 1391(b) because each defendant  is located in the Eastern District and the events and/or omissions giving rise to plaintiffs' claims occurred inside the City of Howell, Michigan, in this District.

8.D. Jurisdiction in Count III is based on this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, because the Michigan State law claims arise out a common nucleus of facts with the federal law claims. the ADA and PWDCRA "substantially mirror" each other. The Michigan Persons with Disabilities Civil Rights Act (PWDCRA) is built upon similar policy objective and legal standards as the ADA, and the ADA and PWDCRA "substantially mirror" each other. *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir.2002).

### III.  PARTIES

9. Plaintiff James Rutherford is a member of the Michigan Paralyzed Veterans of America, and Michael Harris is employed by that organization. Both are persons with a mobility disability and have been personally discriminated against and subjected to hazardous conditions due to the access barriers at issue in this case. Each would benefit by the removal of these barriers.

10. Plaintiff James Rutherford and Michael Harris each are a "qualified person with a disability" as defined by the Americans With Disabilities Act, and also under the Rehabilitation Act.

11. Plaintiff Becky Rutherford does not have a disability, but the barriers to access described herein discriminate against her on the basis of her association with her husband, James Rutherford: specifically, she is hampered in joining him for travel and festivals and other facilities, programs and activities throughout Howell and must worry about him travelling in traffic to avoid the myriad barriers to access.

12. Each plaintiff is being denied access to defendants' facilities, programs, services or activities. Each plaintiff continues to suffer from defendants' failure to make streets, roads and highways, municipal parking,

sidewalks or other street level pedestrian walkways readily accessible to and usable by plaintiffs, and will benefit from the relief sought here.

13. Defendants the City of Howell, ("Howell") the Howell Downtown Development Authority ("DDA"), are each public entities as that term is defined under 42 U.S.C. § 12131(l); 28 C.F.R. § 35.104.

14. Defendants are discriminating against plaintiffs by denying access to facilities, programs, services and activities located within Howell.

CLASS ACTION ALLEGATIONS

15. Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the plaintiffs bring this action, for final injunctive and declaratory relief purposes only, on their own behalf and on behalf of all persons similarly situated. The plaintiffs seek to represent a class composed of all persons with mobility disabilities and who are discriminated against on the basis of association with them, who use and/or will in the future use defendants' facilities, services, programs or activities within the City of Howell, Michigan, The claims asserted herein are solely for final injunctive and declaratory relief for the class; damage claims are not included in this complaint.

A. Several thousand such persons are hampered in living, visiting or traveling in and about Howell and its DDA's facilities, services, programs

and activities. The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court.

B. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that they, or their members, are all being denied, or will be denied, their civil rights of access to defendants' facilities, services, programs or activities due to the barriers described herein.

C. Common questions of law and fact predominate, including questions raised by plaintiffs' allegations that defendants have failed to provide access to defendants' facilities, programs, services or activities or have constructed or altered facilities without making the altered portions accessible according to law.

D. The plaintiffs are adequate class representatives because they, or their members, are directly impacted by defendants' failure to provide program access to defendants' facilities. The interests of the plaintiffs are not antagonistic to, or in conflict with, the interests of the class as a whole. The attorneys representing the class are experienced in representing clients in class action civil rights claims.

E. Claims of the plaintiffs are typical of the claims of the class as a whole because the plaintiffs, or their members, are similarly affected by defendants' failure to provide access to defendants' facilities, services, program or activities.

F. Defendants have acted and/or failed to act on grounds generally applicable to the class as a whole, thereby making appropriate declaratory and final injunctive relief with respect to the class as a whole.

G. References to plaintiffs shall be deemed to include each plaintiff and each member of the class, unless otherwise indicated.

## Plaintiffs' Examples

16. Plaintiffs James and Becky Rutherford live in a subdivision inside of Howell. Within the last three years—inside this subdivision, Howell replaced curb ramps throughout the subdivision.

17. As a part of this project, Howell removed more than one long-existing curb ramp, planting grass and building solid curbs in their place.

18. In other locations, Howell installed inaccessible curb ramps and sidewalk segments throughout the Rutherford's subdivision.

19. One of these curb ramps caused Jim Rutherford to bend and severely damage his footrest as he attempted to transition from the street to the curb ramp. He was forced to find a replacement at great inconvenience,

and to this day, he avoids that new curb ramp, instead, traveling in traffic around the curb ramp.

20. The Rutherford's mail box is located down the street from their house. Howell installed a new curb ramp leading to the mail box. This curb ramp has an abrupt change in level at the transition from the street to the curb ramp leading to the mail box pad. Using the curb ramp jolts Mr. Rutherford's wheelchair and is a tipping hazard. In addition, the cement pad has a steep slope and lacks a level landing, greatly hampering his access to the mailbox. It is difficult and dangerous for Mr. Rutherford to access his mail.

21. This abrupt change in level is repeated in virtually all of the new curb ramps throughout the subdivision. Worse still, during snow Howell plows the snow from the road onto the curb ramps throughout the subdivision, and ice forms on the curb ramps making the curb ramps completely inaccessible to Mr. Rutherford. This total inaccessibility last most of the winter, and Mr. Rutherford is segregated and unable to use pick up his mail.

22. At an intersection very close to his house, Howell installed a new sidewalk segment with a running slope exceeding 10% for a total rise exceeding 30 inches. Mr. Rutherford cannot use this sidewalk without losing

control of his wheelchair and tipping over. Instead, he avoids this sidewalk and most of the new curb ramps throughout his neighborhood, instead traveling in traffic. These and the many similar barriers to access installed during his subdivision project greatly hamper the Rutherford's ability to use the sidewalks to and from their house into and out of downtown Howell. During most of the winter, Mr. Rutherford must avoid the sidewalks and curb ramps entirely and travel in the traffic portion of the streets.

23. At the time of this project, plaintiff James Rutherford complained vociferously to the Howell employee in charge of the project, but defendants left the barriers to access in place.

24. Even more recently, Howell installed a new curb ramp and sidewalk segment at the southeast corner of the intersection of North Michigan with East Clinton.

25. This new segment of sidewalk has a running slope as steep as 13.4%, with a drop off exceeding thee inches that lacks any edge protection whatsoever. This is a severe tipping hazard. James Rutherford is not able to use this newly altered corner because of this total lack of access.

26. Just this week the plaintiffs Rutherford attended a funeral service on a building on Church Street in downtown Howell. Traveling on the sidewalk leading to the service, Mr. Rutherford hit an approximately 5 inch

abrupt change in level, nearly throwing him from his wheelchair. On the way back, he used the sidewalk on the other side of the street, but he encountered an abrupt change in level of approximately 4 inches, which caused his front wheels to turn sideways, nearly throwing him from his wheelchair once again.

27. Other curb ramps in town have running slopes exceeding 17 % and cross slopes exceeding 9%. Any attempt to use these curb ramps would likely cause a wheel chair to tip over into traffic at the intersections.

28. Virtually every curb ramp and sidewalk throughout Howell suffers from these or similar barriers to access. Viewed in its entirety, Howell's and its DDA's sidewalk facilities, programs, services or activities of pedestrian walkways are not accessible to the Plaintiffs Rutherford and Harris.

29. Snow and ice make each of these barriers worse. At times, each plaintiff has had to avoid Howell's facilities, services, programs or activities for extended periods due to snow and ice covering curb ramps throughout Howell.

30. Going back to January 26, 1992, Howell and or its DDA has resurfaced or altered many streets, roads, highways and municipal parking, but have left in place curbs or other barriers to street level pedestrian walkways. Throughout the City, plaintiffs cannot travel for more than a

block or two without encountering non-ADA compliant slopes and changes in level, and other barriers to access.

31. Upon information and belief, going back to January 26, 1992, Howell and or its DDA has resurfaced or altered many streets and roads, and has built curb ramps or other sloped areas that suffer from one or more of the following conditions: a running slope exceeding 8.33%, a cross slope exceeding 1:48, a top landing with slopes exceeding 1:48, changes in level exceeding ¼ inch, lips at transitions to street crossings, counter slopes exceeding 5%, holes or defects in the crosswalk or where the crosswalk meets the curb ramp. Many of these curb ramps constitute tipping.

32. In sum, the plaintiffs Rutherford and Harris are segregated from almost every facility, service, program or activity, including street level pedestrian walkways, street crossings, municipal parking, the festivals, and the library in Howell. They risk their safety each time they attempt to use sidewalks, street crossings and municipal parking in Howell. They constantly encounter these and numerous other barriers to access each time they attempt to access the facilities, services programs and activities throughout Howell and its DDA's areas.

## Howell's Municipal Parking

33. The Plaintiffs Rutherford and Harris also have vans modified for hand-controls and ramps for embarking and deploying to and from their vans using their wheelchairs.

34. Howell and its DDA provide and maintain a service, program or activity of municipal parking

35. Almost all of these spaces have a surface slope exceeding 1:48. In addition, many lack a clear space to deploy a ramp, and the surface to deploy the ramp suffers from slopes exceeding 1:48, among other defects. When plaintiffs leave their vehicles, they must travel in dangerous traffic to find a curb ramp leading out of the traffic, if such a curb ramp even exists. None of this municipal parking is, to the maximum extent feasible, readily accessible to and usable by plaintiffs. 28 C.F.R. §§ 35.151(a), (b) and (c). Defendants' municipal parking lacks an accessible route to and from other facilities, services, programs, and activities served by each lot. Howell and its DDA's municipal parking facilities, service, program or activity, when viewed in its entirety is inaccessible to plaintiffs.

36. Defendants restriped, resurfaced or otherwise altered after January 26, 1992 each of their municipal parking lots and on-street parking The majority of these lots has one or more parking spaces designated for

accessible parking. None of these parking lots are, to the maximum extent feasible, readily accessible to and usable by plaintiffs. 28 C.F.R. §§ 35.151(a), (b) and (c). Each violates one or more of the measurements for accessible parking spaces. For example see: www.ada.gov/restripe.pdf; https://adata.org/factsheet/parking. Each lacks an accessible route to and from other facilities, services, programs, and activities served by each lot. Howell and its DDA's municipal parking facilities, service, program or activity is inaccessible to plaintiffs.

37. Defendants' provision of on-street and other municipal parking is a "service, program or activity" of defendants. See *Fortyune v City of Lomita*, 766 F.3d 1098, 1102-03 (9th Cir. 2014). When viewed in its entirety, it is not readily accessible to and usable by plaintiffs, and is inaccessible to plaintiffs and all others similarly situated.

38. This is not an exhaustive list, it is merely to illustrate the lack of access plaintiffs seek to correct.

39. Snow and ice make each of these barriers worse. At times, each plaintiff has had to avoid Howell's municipal parking for extended periods due to snow and ice.

## Defendant Howell and DDA's Festivals

40. Annually, defendants Howell and Howell DDA sponsor and host several festivals. The plaintiffs Rutherford has had to miss some part or all of these events due to the lack of accessible municipal parking, accessible sidewalks and street crossings, and other access barriers at the various venues. These programs, services or activities are not readily accessible to and usable by plaintiffs due in part to the lack of ADA-complaint municipal parking, sidewalks and street crossings.

41. Along with its other facilities, services, program and activities, defendant Howell and/or its DDA also sponsors and otherwise hosts several public festivals. Some of these are:

A. "Rock the Block", also including "Best Bites on the Block". Howell and its DDA first sponsored this program service or activity in 2015, and has repeated the event in 2016 and again this year. Defendants' websites describes this program as "occurring in the center of the city" and featuring "free live entertainment" and "delicious food".

B. Each year defendants sponsor and provide the Melon Festival and also the Legend of Sleepy Hollow, among other programs, services or activities.

42. Due to the lack of barriers to access shot through Howell and its DDA's pedestrian walkways and municipal parking, these programs, services or activities are not, when viewed in their entirety, accessible to Plaintiffs.

43. And, snow and ice make each of these barriers to access worse. Plaintiff James Rutherford has had to avoid downtown Howell for extended periods due to snow and ice on the sidewalks, curb ramps and street crossings, and municipal parking. defendants' plowing operations and property owners need training in how to avoid these barriers to access.

44. **Summary of Examples of Defendants' Discrimination**. The above examples are not exhaustive. Rather, they are illustrations of several of policies followed by each defendants, that, taken together, render defendants' facilities, services, programs and activities, when viewed in their entirely, inaccessible to Plaintiffs and all others similarly situated. Without Court intervention to correct defendants' discrimination, these will remain not readily accessible to and usable by plaintiffs and class members.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION: CLASS-WIDE FINAL INJUNCTIVE RELIEF CLAIM UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT

45. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 42 above, inclusive. Plaintiffs bring this count for class-wide declaratory and final injunctive relief, but not money damages, under Title II of the Americans With Disabilities Act (ADA).

46. Title II of the ADA prohibits covered public entities from denying individuals with disabilities "the benefits of " any "program" or "activity" or "service[]" of a covered entity on the basis of disability. 42 U.S.C. 12132. As the Supreme Court has recognized, those statutory terms are unambiguously broad. See *Pennsylvania Dep't of Corr.* v. *Yeskey*, 524 U.S. 206, 212 (1998). Section 504 specifically provides that "the term 'program or activity' means *all of the operations of* " a covered public entity, 29 U.S.C. 794(b) (emphasis added), and Congress required Title II to be interpreted at least as broadly as Section 504, see 42 U.S.C. 12201(a).

47. Among other things**,** Title II of the Americans With Disabilities Act requires that when a public entity builds or alters[2] any part of a facility after

_____

[2] Throughout this document "alter, altered, or alteration" have the definition set forth in ***Joint Technical Assistance July 2013 and its Supplemental Q***

January 26, 1992, it shall, to the maximum extent possible, be altered so that it is readily accessible to and usable by individuals with disabilities. 42 U.S.C. §§ 12132; 28 C.F.R. §§ 35.151(a), (b) (c) & (i). This includes, among other things, resurfacing or other alterations of defendants' roads and walks. *Ability Center*, 385 F.3d 913-914; *Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011); *Kinney v. Yerusalim*, 9 F.3d 1067 (3rd Cir.1993)(*cert. denied sub nom Hoskins v. Kinney*, 114 S.Ct. 1545, 128 L.Ed.2d 196 (1994). Many of defendants' roads, walks and parking lots at issue in this lawsuit have been "altered" after 1991 "by, on behalf of, or for the use" of each of the defendants", but are not "to the maximum extent possible readily usable by and accessible to" plaintiffs. Section 35.151(a) and (b). Indeed, as set forth in the facts above, defendants' pedestrian crossings, sidewalks and other street level pedestrian walkways deny access to plaintiffs. And, each altered walk, road and curb cut must meet the ADA Standards. 28 C.F.R. § 35.151(c). By altering municipal parking, sidewalks other street level pedestrian walkways without making them, to the maximum extent feasible, accessible to and usable by plaintiffs, each defendant violates the ADA. *Ability Center, supra, Kinney, supra, and Frame, supra.*

---

***and A January*** 2015. These are available at on the USDOJ website as http://www.ada.QOv/doj-fhwa-ta-supplement-201S.htm I.

48. Title II regulations promulgated by the Department of Justice state that "[n]o qualified individual with a disability shall, on the basis of disability, * * * be denied the benefits of the services, programs, or activities of a public entity." 28 C.F.R. § 35.130. As stated herein, defendants' are providing services, programs or activities that, when viewed in their entirety, are not readily accessible to and usable by plaintiffs. As the Sixth Circuit recently stated:

> The conclusion that sidewalks may qualify as a service is supported by a 2004 decision from this court, a Title II implementing regulation, and the Justice Department's amicus briefs in several sidewalk cases.

*Babcock v Michigan*, 812 F.3d 531, 543 (6th Cir. 2016) (Rogers, concurring). "The agency's interpretation of its own regulations is entitled to substantial deference." Id., at 544.

49. As the Department of Justice has stated, the curb ramp requirements in the Title II regulations were premised on the view that "maintenance of pedestrian walkways by public entities is a covered program." 60 Fed. Reg. 58,462 (1995) (notice of proposed rulemaking). That position, embodied in the Department of Justice's regulations implementing Title II, is entitled to substantial deference. See *Chevron U.S.A., Inc.* v. *Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

50. Moreover, in subsequent legislation, Congress has explicitly recognized that "public sidewalks" are covered by Title II. Section 1108 of the Transportation Equity Act for the 21st Century, Pub. L. No. 105-178, 112 Stat. 107 (23 U.S.C. 133(b)(3)), which was passed in 1998, authorizes the use of federal funds set aside for transportation improvements undertaken by the States for "the modification of public sidewalks to comply with the Americans with Disabilities Act of 1990."

51. Providing and maintaining a network of walkways for pedestrians to get around town is a quintessential, not to mention ages old, government service. A city's provision and maintenance of sidewalks, curbs, on-street parking and parking lots clearly constitute a "service[], program[], or activit[y]," 42 U.S.C. 12132, under Title II of the ADA. As the Ninth Circuit held in *Barden*, "maintenance of public sidewalks * * * is a normal function of a municipal entity." *Barden* v. *City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002), cert. denied, 539 U.S. 958 (2003) (sidewalks are a service, program or activity for purposes of the ADA, and are a service or program for purposes of Section 504). And, as the Supreme Court has recognized in another context, the provision of sidewalks is an archetypal "general government service[]." *Everson* v. *Board of Educ.*, 330 U.S. 1, 17-18 (1947) (noting that there is no Establishment Clause difficulty in giving churches

access to "such general government services as ordinary police and fire protection, connections for sewage disposal, public highways and sidewalks"). Sidewalks permit the public not only to stay clear of road traffic, but to access shops and businesses, means of public transportation, places of employment, and government offices and facilities. And for "time out of mind," sidewalks have been used for the purpose of public association and speech. *Boos* v. *Barry*, 485 U.S. 312, 318 (1988) (quoting *Hague* v. *CIO*, 307 U.S. 496, 515 (1939) (opinion of Roberts, J.)).

52. Likewise, Defendants' provision of on-street and other municipal parking is a "service, program or activity" of defendants. See *Fortyune*, 766 F.3d 1102-03. None of these parking spaces is accessible to plaintiffs. When viewed in its entirety, it is not readily accessible to and usable by plaintiffs.

53. After constructing or altering a facility, each defendant "shall maintain in operable working condition those features of facilities that are required to be readily accessible to and usable by persons with disabilities by the Act." 28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks, passageways and parking lots. 28 C.F.R. § 35.104. As set forth herein, each defendant routinely fails to do this.

54. Defendants' conduct in failing to maintain accessible facilities by failing to replace crumbling and uneven pavement, remove protruding

and/or moveable obstructions, ensure a sufficiently wide path of travel, correct excessive cross-slopes and running slopes on roads and walks, failing to timely remove snow and ice, failing to remove gravel and other detritus from walks and curb ramps, and failing to provide accessible municipal parking thus constitutes unlawful discrimination on the basis of disability in violation of Title II of the ADA.

55. Each defendant is denying plaintiffs participation in the services, programs or activities of the library, on-street parking, and festivals due to lack of access to them. Applying the general prohibition to facilities, the regulations provide that no one with a covered disability "shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity." 28 C.F.R. § 35.149. And the regulations expressly define "facility" to include "roads" and "walks" controlled by a public entity. 28 C.F.R. § 35.104.

56. Each defendant is violating Title II's access requirements set forth in 28 C.F.R. § 149 (the general prohibition against discrimination); 28 C.F.R. § 150 (requiring accessibility of facilities existing prior to January 26, 1992, the effective date of Title II); and, 28 C.F.R. § 151 (requiring that

facilities newly constructed or altered after January 26, 1992 be fully accessible).

57. Defendants' inaccessible municipal parking, sidewalks and street crossings stop plaintiffs from participating in defendants' services, programs or activities, such as the library, municipal parking lots, on-street parking, yearly festivals, and the like, as well as a lack of an accessible route.

58. Defendants' conduct constitutes an ongoing and continuous violation of the ADA and unless restrained from doing so, defendants will continue to violate the ADA. Said conduct, unless enjoined, will continue to inflict injuries for which plaintiffs have no adequate remedy at law. Consequently, plaintiffs are entitled to final injunctive relief pursuant to section 308 of the ADA 42 U.S.C. § 12188, and reasonable attorneys fees.

## SECOND CAUSE OF ACTION:
## CLASS-WIDE CLAIM UNDER THE REHABILITATION ACT OF 1973

59. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 56 above, inclusive. Plaintiffs bring this count pursuant to Section 504 of the Rehabilitation Act (RA) for class-wide declaratory and final injunctive relief, but not monetary relief.

60. Section 504 of the Rehabilitation Act (RA) prohibits covered public entities from denying individuals with disabilities "the benefits of " any "program" or "activity" of a covered entity on the basis of disability. 29

U.S.C. 794(a). As the Supreme Court has recognized, those statutory terms are unambiguously broad. See *Yeskey*, 524 U.S. 206, 212 (1998). Section 504 specifically provides that "the term 'program or activity' means *all of the operations of* " a covered public entity, 29 U.S.C. 794(b) (emphasis added).

61. The RA provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (Section 504 of the RA).

62. The RA defines "program or activity" as "all of the operations of" a qualifying local government. 29 U.S.C. § 794(B)(1)(A). This includes defendants' sidewalks, other street level pedestrian walkways, and on-municipal parking. *Barden, supra; Ability Center, supra*; *Frame, Fortyune, supra*.

63. The RA also mandates each defendant to make each "facility" accessible according to law. "The regulations define 'facility' as including 'roads, walks, [and] parking lots.' 28 C.F.R. § 39.103." *Ability Center,* 385 F.3rd 911, n. 10.

64. Upon information and belief, at all times relevant, each defendant has received federal financial assistance, which each has spent on one or more of the facilities, programs or activities complained of herein.

65. Each plaintiff (1) has a disability; (2) is and has been otherwise qualified to participate in defendants' federally funded programs or activities; and (3) was denied the benefits of the programs or activities or was otherwise subject to discrimination because of his or her disability.[3]

66. As detailed above, beginning with the effective date of the Rehabilitation Act, and continuing each year to the present, each defendant has received federal money but has spent it engaging in a continuing pattern and practice of over-arching discrimination against plaintiffs and class members by denying the benefits of, or subjecting them to discrimination under several programs or activities receiving Federal financial assistance.

67. Plaintiffs are entitled to declaratory relief, to final injunctive relief ordering each defendant to bring these facilities, programs or activities into compliance, and plaintiffs reasonable attorneys fees and costs.

---

[3] Although the Rehab Act—passed in 1973—uses the term "handicapped", Congress in the late 1980s stopped using this term because "individuals with disabilities find the term 'handicapped' objectionable." *Helen L. v. Didario*, 46 F.3d 325, 333 n8 (3rd Cir. 1995).

## COUNT THREE:
## MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

68. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 65 above, inclusive. Plaintiffs bring this count for declaratory and final injunctive relief, but not for monetary damages, against defendants. The above complained of failure by defendants to construct, alter and maintain their services, programs or activities to be accessible to plaintiffs violates Michigan law at M.C.L. § 37.1301-02. Plaintiffs are entitled to final injunctive and declaratory relief, attorney fees and costs.

69. The Michigan Persons with Disabilities Civil Rights Act (PWDCRA) is built upon similar policy objective and legal standards as the ADA, and the ADA and PWDCRA "substantially mirror" each other. *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir.2002).

70. Defendants Howell and Howell DDA are a "public service" subject to the PWDCRA's Article 3. MCL 37.1301(b). Plaintiffs have "a disability" as defined in the statute. MCL 37.1103(d)(i)(B). Further, just as with the ADA's "qualified individual with a disability" provision, these disabilities are "unrelated" to his or her ability to utilize and benefit from the city streets, pedestrian walkways and municipal parking, with the accommodation their mobility devices. MCL 37.1103(l).

71. The PWDCRA provides that a public service cannot:

Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a . . . public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by any individual of adaptive devices or aids.

72. MCL 37.1302(a). Each defendants' streets, pedestrian crossings, street level pedestrian walkways, municipal parking lots and on-street parking, parades, festivals and community fair are "services and facilities" of each defendant. "Facilities include roads and walks". 28 C.F.R. § 35.104." *Ability Center,* 385 F.3rd 904, n. 3. Also see, *Barden; Frame, supra.* "The public streets [and sidewalks and other street level pedestrian walkways] involved in this case are plainly 'services,' 'facilities,' and 'advantages,' provided and regulated by [each] defendant." *Bertrand v. City of Mackinac Island*, 256 Mich App 13; 662 NW2d 77 (2003)(analyzing the PWDCRA's duties to pedestrians with disabilities).

73. Defendants Howell and DDA have violated the PWDCRA by denying each plaintiff the full and equal enjoyment of the streets, sidewalks and other pedestrian walkways despite plaintiffs' ability to use and benefit from these if provided with the accommodation required by the statute. MCL 37.1102(2).

74. Plaintiffs are entitled to declaratory relief, to final injunctive relief ordering these two defendants to bring these services, programs or activities into compliance, and plaintiffs reasonable attorneys fees and costs.

## VII. PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

A. An final injunctive order and judgment enjoining each defendant from violating the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and defendants Howell and Howell DDA from violating Michigan's Persons with Disabilities Civil Rights Act;

B. A final declaration that the services, programs, activities and facilities listed herein under the jurisdiction of defendants, including the municipal parking, streets, roads and highways, sidewalks, and other street level pedestrian walkways, are provided, constructed, designed, and/or maintained in a manner which discriminates against plaintiffs and which fails to provide program access for persons with disabilities as required by law;

C. An final injunction ordering defendants to make these accessible according to law;

D. Plaintiffs' reasonable attorneys' fees, litigation expenses, and costs;

E. Such other and further relief as the Court deems just and proper

Respectfully submitted,

J. Mark Finnegan (P68050)
Denise M. Heberle (P64145)
HEBERLE & FINNEGAN PLLC
2580 Craig Road
Ann Arbor, MI 48103
734-302-3233
734-302-3234 (fax)
hffirm@comcast.net
dmheberle@gmail.com

Attorneys for Plaintiffs